**CAMPBELL v. ST. LOUIS, B. & M. RY. CO. et al.**

No. 9044.

Court of Civil Appeals of Texas. San Antonio.

April 12, 1933.

Rehearing Denied May 3, 1933.

Jesse G. Foster, of Raymondville, for appellant.

S. L. Gill and R. F. Robinson, both of Raymondville, Graham, Graham & Graham, of Brownsville, and A. B. Crane, of Raymondville, for appellees.

SMITH, Justice.

Appellee railway company operates a branch line of its railway from San Perlita

to Raymondville, where it connects with the main line. The Railway Express Agency, a corporation, operates an express business separately from appellee, but uses the latter's facilities in such operation, for which it imposes and collects separate charges. It is a familiar operation and relation, known in a general sense to all.

San Perlita seems to be a considerable shipping point for truck growers, whose products go forward by express. San Perlita and Raymondville, a few miles apart, are common points; that is to say, the express company collects the same charges upon shipments, and the shipper pays the same charges thereon, whether made from the one point or the other.

Only one express carrying train moves over the railroad each day from San Perlita to Raymondville, leaving San Perlita at 3:30 o'clock in the afternoon. Express shipments arriving at the station from the farms after that hour must wait over until the following day, unless carried by truck to Raymondville, and put on trains passing through late in the nighttime. The result is that it is to the great advantage of the shipper, when he misses the 3:30 train at San Perlita, to get his shipment over to Raymondville in time for the night trains.

Out of these necessities has grown the custom of moving such belated shipments, originating at San Perlita, by truck to Raymondville, for the night train.

It seems that Pruitt, the joint local agent of both the railway and express companies at San Perlita, is entitled to a commission of 10 per cent. of the charges on all express shipments billed out of his station, although the gross charges collected thereon by the express company are no more than upon like shipments originating at Raymondville. In short no one but the express agent profits by the fact that a shipment is billed from San Perlita rather than from Raymondville.

In this situation there originated the custom whereby the shippers in the San Perlita vicinity billed their shipments at the San Perlita express office, and then hauled them by truck and actually delivered them to the express company at Raymondville, whence they were shipped out by the usual method; that is, by train. By this process the express agent at San Perlita got his commission and the shipper caught an earlier train with his produce. But the result was still the same to the express company, as it was of course to the railway company, which was but the instrumentality of the express company.

This situation developed the present controversy. Appellant, H. D. Campbell, was the largest shipper at San Perlita, and prior to the transaction here involved billed his belated shipments at San Perlita and then hauled them in his own trucks to Raymondville, where they were actually first delivered to the express company for transportation. Both Campbell and the express agent were mutually interested in this method, since the former thereby secured earlier movement of his produce, and the latter got 10 per cent. of the express charges. They thereupon hit on the plan of getting the railway company or the express company to pay Campbell for trucking the shipments from San Perlita to Raymondville, at the rate of $3.60 per truck load of produce, including that of others as well as his own. The agent first endeavored to get his principals to contract with him to do this hauling, but without success, whereupon he proposed to various officials of his principals that the hauling contract be given Campbell, who proceeded upon the assumption that such contract would be forthcoming from the carriers, until his bills therefor aggregated $450. The carriers declined to recognize such contract or pay Campbell's bill, and were sustained in the suit thereon filed later by Campbell, who has appealed.

We conclude, without hesitation, that the judgment must be affirmed. The proposed contract was an extraordinary one in sundry respects. Its proponents, the agent and the shipper, alone would profit by it, and the carriers, whom the proponents elected should pay for its performance, were to receive none of the profits therefrom. Its execution would have the effect of a discriminatory preference of shipper Campbell over other shippers, which perhaps would subject the carriers to prosecution and damages. In order to bind the carriers to such contract, even granting they could legally enter into such, the evidence should clearly show that their responsible officials entered thereunto, or ratified such agreement when made by an agent of limited authority, such as Pruitt. No such showing was made in the case.

None of the testimony even tended to connect the express company with the transaction, whereas the testimony connecting the railway company therewith was certainly not so conclusive as to authorize this court to override the findings and judgment of the trial judge. The evidence was such as to amply support the implied findings of the trial judge that the responsible officials of the carriers at no time approved or ratified the alleged agreement made by their local agent with appellant, and that such agreement was but a private arrangement between the agent and appellant, who alone profited thereby.

The judgment is affirmed.